UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROL JEWEL, SHIRLEY HOILAND and MARY L. PATRICK, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNUMPROVIDENT CORPORATION, UNUM LIFE INSURANCE COMPANY OF AMERICA, FIRST UNUM LIFE INSURANCE COMPANY, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY and THE PAUL REVERE LIFE INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 04-40262-FDS |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION TO REMAND

### Introduction

Plaintiffs Carol Jewel, Shirley Hoiland and Mary L. Patrick ("Plaintiffs"), by and through their undersigned counsel of record, submit this Memorandum in support of their Motion to Remand this action to the Worcester Superior Court Department of the Trial Court of the Commonwealth of Massachusetts. The Motion to Remand is necessitated by the improper and frivolous eleventh hour removal of this action by the Defendants, more than one year after the commencement of this action and approximately 45 minutes before a scheduled hearing in the Superior Court on Plaintiffs' Emergency Motion for Expedited Notice to Class Members and also on Plaintiffs' Motion for Class Certification.

00003875.WPD ; 1

Defendants base their removal here not on any claims or allegations in the Complaint, which they acknowledge provides no basis for removal jurisdiction,[1] but on Plaintiffs' Emergency Motion To (1) Supplement the Record on Plaintiffs' Motion for Class Certification, and (2) Provide Expedited Notice to Class Members of Pendency of Proposed Class Action ("Emergency Motion"). The Emergency Motion was filed for the purpose of protecting the rights of the members of the proposed class herein with respect to a notice that is about to be sent to class members by the Defendants pursuant to a settlement agreement with state insurance regulators (the "Regulatory Settlement Agreement" or "RSA"). The Notice will seriously prejudice and confuse Class Members by, *inter alia*, omitting critical information about this class action and its effect on the class members' claims for disability benefits against the defendants, as well as the consequences of requesting the relief proposed in the Notice, which may prevent Class Members from obtaining the more comprehensive relief sought in this action.

In their desperate attempt to stall the prosecution of this action and force Plaintiffs into a procedural quagmire, Defendants assert federal jurisdiction based on ERISA preemption, despite the fact that Defendants admit that the Complaint does not assert any ERISA-governed claim. Defendants' preemption claim is based upon a factually and legally unsupportable contention that the relief requested by Plaintiffs in the Emergency Motion "seeks to change and alter a remedial scheme entered into by the [Department of Labor] under ERISA."[2] From a factual standpoint, Plaintiffs' Emergency Motion does not seek to "alter any regulatory or remedial scheme," since it only seeks to have notice sent to the non-ERISA class members in this action. From a legal

---

[1] Notice of Removal, ¶4.

[2] Notice of Removal, ¶20. *See also Id.*, ¶17.

standpoint, even if there had been an attempt by Plaintiffs to infringe upon or alter the regulatory enforcement action regarding ERISA governed claims–which has not occurred–there is no legal authority upon which such activity could invoke federal jurisdiction under 28 U.S.C., §§ 1331 and/or 1441. Moreover, preemption under 29 U.S.C., § 1144 is clearly only applicable to ERISA governed claims asserted in a pleading, and admittedly, no such claim has ever been asserted in this action. Thus, there is simply no basis for any type of ERISA preemption here.

Defendants' other asserted basis for removal, that they were acting under the direction of a "federal officer," is also bogus. Defendants claim that in entering into the Regulatory Settlement Agreement with the various state insurance departments and the Department of Labor ("DOL"), they are somehow "acting under an officer of the United States . . . under the color of office within the meaning of 28 U.S.C. §1442."[3] This is a gross misapplication of the elements for federal officer jurisdiction, which the Defendants do not even come close to satisfying here. There is a line between the creative and the frivolous, and Defendants have leaped across it.

**Factual and Procedural Background**

This action was filed on December 11, 2003, in the Worcester Superior Court, and seeks relief on behalf of holders of long-term disability policies with the Defendant insurers, other than persons whose policies are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Complaint alleges a well-documented, corporate-wide scheme by which Defendants consciously manipulated their disability claims procedures so as to wrongfully limit,

---

[3] Notice of Removal, ¶18.

cease or deny legitimate disability claims, in order to increase profits.[4] Plaintiffs allege that this conduct on the part of the Defendants "constitutes unfair claims settlement practices in violation of M.G.L., c. 176D, §3(9), and unfair and deceptive acts or practices in violation of M.G.L., c. 93A, §2, all of which are actionable under M.G.L., c. 93A, §9." Complaint, ¶61. The proposed class, on whose behalf this action is brought, is defined as follows:

> All individual long-term disability policyholders and all participants in group, long-term disability plans **which are not covered by the Employee Retirement Income Security Act of 1974 ("Non-ERISA Group Plan Participants")** who (a) had coverage issued by an insuring subsidiary of UNUMProvident named herein as a Defendant; and (b) whose claims for long-term disability benefits were denied, or whose payments of long-term disability benefits were terminated or suspended, on or after January 1, 1994 by any Defendant after being subjected to one or more of the abusive claims practices alleged in the Complaint.

Complaint, ¶12 (emphasis supplied). As is evident from the class definition, ERISA plan participants are specifically excluded from the proposed class.

On or about July 15, 2004, Plaintiffs served on Defendants' counsel, pursuant to Superior Court Rule 9A, their Motion for Class Certification and supporting papers. Subsequently, the motion for class certification was fully briefed, with the Defendants' opposition papers and Plaintiffs' reply papers, and the motion package was filed with the Superior Court on September 29, 2004. The class certification motion was then set for a hearing on November 15, 2004. At the request of Defendants' counsel this hearing was postponed, and ultimately rescheduled for Wednesday, December 22 at 2:30 pm.

Meanwhile, on November 18, 2004, the Defendants announced that it had entered into the

---

[4] Similar actions were filed in various federal courts on behalf of participants in plans subject to ERISA and were transferred by the Judicial Panel on MultiDistrict Litigation to the Eastern District of Tennessee. *See In re UnumProvident Corp. ERISA Benefits Denial Actions*, MDL Case No. 1:03-md-1552 (E.D.Tenn.).

RSA with certain state regulators and the DOL. The RSA provides for: the payment of penalties to the state insurance regulators; reviews of certain previously denied claims; notice of the claims reassessment process to certain persons whose claims were denied or terminated; and certain limited changes to Defendants' claims organization, claims procedure and corporate governance. For the purposes of this Motion, the most critical feature of the RSA is the proposed notice and its potential effect on those class members who are to receive it.

The RSA provides for the Defendants to directly communicate by letter (the "RSA Notice") with approximately 215,000 long-term disability claimants, including approximately 39,000 individual policyholders who are members of the proposed Class in this action. The RSA Notice is deficient in several respects, not the least of which is that the Notice fails to contain any reference to this action, the nature of the relief sought herein, or any information that would enable Class members to assess the relative merits of proceeding under the limited RSA claim review process, which might result in a waiver of the superior forms of relief sought in this action. Plaintiffs' counsel proposed to Defendants that the parties make a joint submission concerning the effect of the RSA on the pending litigation to the Superior Court, but Defendants' counsel rejected their proposal. Accordingly, on December 17, 2004, Plaintiffs filed their Emergency Motion. In the Emergency Motion, Plaintiffs seek either (a) the enclosure of a separate notice with the RSA Notice which would provide, *inter alia*, a description of this action and the nature of the relief sought herein, and a caveat that the claimant may be excluded from participation in this class action if he/she elects review under the RSA and receives any additional benefits therefrom; or (b) insertion of such language into the RSA Notice.

Then, on December 22, approximately 45 minutes before a scheduled hearing on

Plaintiffs' Motion for Class Certification in the Superior Court, Plaintiffs were served (at the courthouse cafeteria) with a copy of Defendants' just-filed Notice of Removal. Not only had Plaintiffs' counsel (and, presumably, the Superior Court judge) spent substantial time preparing for this hearing, but certain of Plaintiffs' counsel had also traveled from as far as Minneapolis to attend the hearing. Because the Defendants' last minute removal divested the Superior Court of jurisdiction over this action, the class certification hearing could not take place as scheduled, nor can any other state court proceedings take place unless and until the case is remanded.

## Argument

### A. Defendants, Having Removed this Case, Have the Burden to Establish Federal Subject Matter Jurisdiction

A civil action is removable only if the plaintiff could have originally brought the action in federal court. *See* 28 U.S.C., § 1441 (a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C., § 1447(c). Defendants, having removed this case from state court, have the burden of demonstrating that this Court has subject matter jurisdiction. *Danca v. Private Health Care Systems, Inc.*, 185 F. 2d 1, 4 (1st Cir. 1999); *Gattegno v. Sprint Corporation*, 297 F. Supp. 2d 372, 374 (D. Mass. 2003); *Ciardi v. F. Hoffman-La Roche, Ltd.*, 2000 WL 159320 (D. Mass. Feb. 7, 2000). Further, it is axiomatic that the removal statute be strictly construed. *Shamrock Oil Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Gattegno*, 297 F. Supp. 2d at 374. Any doubt as to the existence of federal jurisdiction must be resolved against such jurisdiction. *See, e.g., Danca*, 185 F. 3d at 4; *Bally v. National Collegiate Athletic Assoc.*, 707 F. Supp. 57, 58 (D. Mass. 1988). In this case, Defendants have thoroughly failed to establish the necessary predicates to federal jurisdiction.

## B.     There is No ERISA Jurisdiction

As the Defendants acknowledge, their removal of this action is based solely on the relief sought by the Plaintiffs in the Emergency Motion, and is not based on the Complaint (which would clearly not be timely).[5] Notice of Removal, ¶¶ 4, 13-17. As one purported basis for federal jurisdiction, Defendants contend that the relief requested by the Plaintiffs in the Emergency Motion somehow subjects this action to ERISA pre-emption because it "seeks to change and alter a remedial scheme entered into by the DOL under ERISA."[6] This is patently ridiculous. First, there is no "remedial scheme" to be changed or altered; instead, there is simply a voluntary settlement agreement (the RSA) entered into among the Defendants and various state insurance regulators and joined by the DOL. Second, the Emergency Motion does not seek to change or alter any provision of the RSA. The Plaintiffs simply seek to include with the RSA Notice (either by way of a separate notice or language added to the RSA Notice) a necessary and appropriate reference to this action and the claims for relief asserted herein. This will not interfere with the RSA process, but will protect the due process rights of class members by providing them with full and fair information prior to their election to participate in the RSA claim review process. Finally, the proposed additional notice has absolutely nothing to do with ERISA. As noted above, this action is brought on behalf of only participants in **non-ERISA plans**, and the Plaintiffs' proposed notice seeks to protect the rights of those persons. Defendants' assertion that the *Plaintiffs* offer no method for determining which recipients of

---

[5]     28 U.S.C., §1446(b).

[6]     Notice of Removal, ¶19.

Plaintiffs' proposed notice are ERISA participants[7] turns the removal standard on its head. As noted above, it is not the Plaintiffs who must demonstrate the absence of federal jurisdiction, but rather, it is the Defendants who must carry the burden of demonstrating that federal jurisdiction exists. *Danca*, 185 F. 3d at 4.

*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987), offered by the Defendants in support of their ERISA pre-emption argument here, does nothing to support that argument. In *Taylor*, the plaintiff's claim was pre-empted under ERISA because it was "a suit by a beneficiary to recover benefits from [an ERISA-covered] plan." *Id.*, 481 U.S. at 62-63. Here, by contrast, no relief is being sought in connection with any ERISA-governed plan or on behalf of any beneficiaries in such a plan.

C.    **There is No Federal Officer Jurisdiction**

Defendants' other purported basis for federal jurisdiction fares no better. Defendants claim that the Emergency Motion challenges conduct they are engaging in under the direction of a federal officer or agency (in this case, the DOL) within the meaning of 28 U.S.C., § 1442(a)(1).[8] Specifically, Defendants contend that by following the terms of the RSA, and sending the RSA Notice, they are acting "under the directive of the Secretary [of Labor] and the DOL."[9] However, the "acting under" requirement of the federal officer removal statute

---

[7]    Notice of Removal., ¶14. While Plaintiffs have not been afforded discovery as to Defendants' internal computer systems, it is difficult to believe that Defendants are unable to distinguish between participants in group plans subject to ERISA and participants in individual and group plans not subject to ERISA. In any event, this is Defendants' burden, not Plaintiffs'.

[8]    Notice of Removal, Pars. 15, 16, 18.

[9]    *Id.*, Par. 16.

(§1442(a)(1)) is not even close to being satisfied in this case. Section 1442, as is the case with any removal statute, is "strictly construed,"[10] and imposes specific requirements for establishing jurisdiction. To sustain federal officer removal jurisdiction, the moving party must "(1) demonstrate that it acted under the direction of a federal officer, (2) raise a federal defense to plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiffs' claims and acts it performed under color of federal office." *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-572 (N.D. Cal. 1992), citing *Mesa v. California*, 489 U.S. 121, 124-125, 134-135 (1989). As is evident from this language, this is a conjunctive requirement, and all three of these elements must be satisfied in order for § 1442(a)(1) to apply. Further, "[a] majority of courts have held that the federal official must have 'direct and detailed control' over the defendant" for removal under § 1442, *Fung*, 816 F. Supp. at 572, quoting *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992), and such control must be directly related to the conduct for which the defendant is being sued. *Id.* Here, the Defendants entered into the RSA voluntarily, and not as the result of any "direct and detailed control" of a federal officer or agency, as is evidenced by the following provision in the RSA:

> 12. The Company does not admit, deny or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against it, but considers it desirable for this matter to be resolved because this Agreement will provide substantial benefits to the Company's present and former policyholders and insureds.

Unum Life Insurance Company of America RSA ("Unum Life RSA") at Section C.12. It would subvert the removal statute for a defendant in a private civil action to voluntarily enter into a settlement agreement with a regulatory agency and then be able to remove the private action to

---

[10] *Danca*, 185 F. 3d at 4.

00003875.WPD ; 1                                   9

federal court on the basis that the defendant was acting under government control in entering into that settlement. And while the Defendants are subject to a certain amount of government control due to the fact that they operate in a regulated industry, that is not sufficient for § 1442 removal jurisdiction:

> If the corporation establishes only that the relevant acts occurred under the general auspices of a federal officer, such as being a participant in a regulated industry, they are not entitled to § 1442(a)(1) removal.

*Fung*, 816 F. Supp. at 572 (internal quotation marks and citations omitted). Any regulatory control that is exercised over the Defendants by virtue of the RSA is by the state regulators and not the DOL. Clearly, the state regulators provided the impetus for the RSA and the Market Conduct Examination that preceded them, and the DOL played a tag-along role. *See* Unum Life RSA at A.4. ("As a result of the Market Examination, the Lead Regulators [the insurance regulators from Maine, Tennessee and Massachusetts] engaged in discussions with the Companies with respect to regulatory concerns raised by the Multistate Examination"). Additionally, any monitoring of the Defendants pursuant to the RSA appears to be the responsibility of the state regulators, and not the DOL. *See Id.* at B.4.c:

> [t]he Lead Regulators **shall** monitor the Claim Reassessment Process and shall conduct examinations of the Claim Reassessment Unit decisions in the manner and at such intervals as they deem appropriate. The DOL **may** monitor the Claim Reassessment Process and conduct examinations of the Claim Reassessment Unit as it deems appropriate.
>
> \*    \*    \*    \*
>
> [t]he Lead Regulators **shall** meet quarterly with the Regulatory Compliance Committee and senior management of the Companies to review the status of the Claim Reassessment Process. The DOL shall receive notice of these meetings and **may attend** as it deems appropriate. (emphasis added)

*See also Id.* at C.2. ("the Lead Regulators . . . will monitor the Company's compliance with this Agreement. . . [t]he DOL **may also** monitor the Company's compliance with this Agreement. . ."). Finally, the fines and assessments payable or potentially payable by the Defendants under the RSA are to be payable under the direction of the state regulators and to the state regulators (and not the DOL). *See Id* at D.6. (". . . should the Lead Regulators determine upon examination that claim reassessment decisions were made in a manner inconsistent with the procedures of the Claim Reassessment Unit, the Group shall pay a fine of $145,000,000."); D.10 (". . . the Lead Regulators and Participating Regulators [regulators from the other states] retain the right to impose any regulatory penalty otherwise available by law, including fines, with respect to the Company's wilfull violation of the terms of this Agreement or other violation of law."); D.12. (" [a]ll fines paid under the foregoing subparagraphs shall be paid to the Lead Regulators and then allocated among the Lead Regulators and all Participating Regulators. . . "). Clearly, control by state regulators (to the extent such control exists), as opposed to the DOL, does nothing to support federal officer jurisdiction under § 1442.

Moreover, to the extent that there is any such governmental control, Defendants cannot possibly satisfy the requirement that such control be directly related to the conduct for which the Defendants are being sued, because the Defendants' removal is admittedly not based on the allegations or claims in the Complaint. Also, there can be no causal nexus between any of the Plaintiffs' claims and any acts performed under color of federal office, because, as noted above, this action asserts claims only on behalf of non-ERISA plan participants, and the DOL has no jurisdiction over the claims of such persons.

Even if the Defendants could satisfy the "direction and control" and "nexus" elements for

federal officer removal jurisdiction, which they cannot, their effort would still fail, because they have not raised, nor could they raise a federal defense to the Plaintiffs' claims. There is no way this necessary element could be satisfied, because the Defendants' removal is not based on the Complaint or on any pleading, and because this is a non-ERISA case in which no federal defense could be asserted.

None of the cases cited by the Defendants support the application of federal officer removal jurisdiction here. In *Fung, supra,* and *Pack v. AC and S, Inc.*, 838 F. Supp. 1099 (D. Md. 1993), the defendants were government contractors, were under direct government control, had to conform to exact government specifications and were continuously monitored and supervised by agents of the government. *See Fung*, 816 F. Supp. at 572; *Pack*, 836 F. Supp. at 1103. *Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F. 2d 482 (1st Cir. 1989), involved perhaps one of the clearest cases of acting under the direction of a federal officer, not even close to the facts presented here. In *Camacho*, the plaintiffs, targets of federal wiretapping, brought suit against two quasi-public telephone service providers for violating their rights under local law by tapping their phones "strictly and solely at federal behest." *Id.*, 868 F. 2d at 486. Not surprisingly, the Court found that the "acting under" requirement was satisfied. Finally, in *In re: MTBE Products Liability Litigation*, 341 F. Supp. 2d 386 (S.D.N.Y. 2004), the defendant gasoline producers, being sued for MTBE contamination of groundwater, were found to be acting under a federal officer because they alleged that the federal government "**directed** them to add MTBE to gasoline for sale in likely spillover areas." 341 F. Supp. 2d at 399 (emphasis added).

### D. Plaintiffs Should be Awarded their Costs and Fees Occasioned by Defendants' Improper Removal

Because there is absolutely no legitimate basis for this removal, the Court, in addition to remanding the case, should award costs and attorneys fees to the Plaintiffs for improper removal, pursuant to 28 U.S.C., § 1447( c). *See, e.g., State ex rel. Nixon v. Nextel West Corp.*, 248 F. Supp. 2d 885, 894 (E.D. Mo. 2003) (awarding costs and fees for improper removal where "every case cited by the parties and found by this Court in independent research" negated federal jurisdiction and supported remand). Here, in addition to the fact that the removal was improper, the Defendants' inexcusable conduct in removing this action less than an hour before the scheduled class certification hearing was clearly intended to frustrate the prosecution of this litigation, and to delay or preclude consideration of Plaintiffs' Motion for Class Certification and Plaintiffs' Emergency Motion. Defendants' cynical manipulation of the legal system calls out for sanctions.

### Conclusion

For all of the foregoing reasons, it is apparent that the defendants have improperly removed this case, and it should be remanded to the Superior Court as soon as possible. Further, because this removal is completely baseless, this Court should award to the Plaintiffs their reasonable attorneys' fees and costs necessitated by the Defendants' improper eleventh hour removal.

Dated: December 29, 2004.

Respectfully submitted,

/s/ David Pastor

David Pastor (BBO #391000)
Douglas M. Brooks (BBO#058850)
**GILMAN AND PASTOR, LLP**
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts 01906
Tel: (781) 231-7850

**MANSFIELD TANICK & COHEN P.A.**
Denise Y. Tataryn (179127)
Seymour J. Mansfield (67271)
Richard J. Fuller (32669)
1700 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
Tel: (612) 339-4295

**SANDALS & ASSOCIATES, P.C.**
Alan M. Sandals (36044)
Scott M. Lempert (76765)
One South Broad Street
Suite 1850
Philadelphia, PA 19107-3418
Tel: (215) 825-4000

**QUADRINO & SCHWARTZ**
Richard J. Quadrino
666 Old Country Road
Garden City, NY 11530
Tel: (516) 745-1122

**ATTORNEYS FOR PLAINTIFFS**

*CERTIFICATE OF SERVICE: I Hereby Certify That A True Copy of Above Document Was Served Upon Attorney Of Record For Each Other Party By Mail (By Fax) On 12-29-04*